■ VIRGINIA TARANTINO, as Executrix of STANLEY E. KOOPER, Deceased, Appellant, v SHERIDAN ALBERT, Respondent.—Order, Supreme Court, Kings County (Jerome D. Cohen, J.), entered November 18, 1988, which, inter alia, fixed the value of certain real estate as of the testator's date of death at $688,934 and required the plaintiff executrix to elect within 30 days of service upon her attorney of a copy of said order with notice of entry to receive her share of either the interest or profits to date, unanimously modified, on the law and on the facts, to the extent of fixing the value of the real property under the second decretal paragraph at $855,000 and permitting plaintiff to make a new election between interest and profits within 30 days after receipt of a full accounting of the property's postdeath operations, and, except as thus modified, affirmed, without costs or disbursements.

Defendant and the testator were equal partners, without any partnership agreement, in Bertsyl Realty Company,

which owned real property consisting of a complex of two five-story, semiattached, multiple dwellings at 148-150 Clinton Street and one smaller building at 20 Aitken Place in Brooklyn Heights. The property, which is situated on a corner, consists of 23 rent-stabilized apartments ranging in size from 2½ rooms (19 apartments) to six rooms (one apartment), all of which are rented.

The testator died on June 25, 1985 from injuries sustained in an automobile accident. After the July 1986 settlement of a probate dispute, plaintiff was, on December 16, 1986, appointed executrix. In the interim, defendant, the surviving partner, continued to operate the building. He retained the rents and net income even after the executrix's appointment and failed to provide her with any information about the property's operations. In October 1985, defendant hired an appraiser who, based on an annual rent roll of $130,368, less $57,730 in expenses, capitalized the value of the property on an income approach as of the date of the testator's death at $493,000. With respect to a replacement approach no value was placed on the property, since reproduction at current costs would be economically impracticable. On the basis of sales comparisons, the appraiser valued the property at $855,000 ($440,000 for the corner property, 148 Clinton Street, and $415,000 for 150 Clinton Street). The appraiser was of the opinion that the higher $855,000 figure was the best and most reliable indicator of value.

Defendant offered to pay the estate $425,000, approximately one half of the latter amount, less one half of the outstanding balance due on the property's mortgages on the date of the testator's death ($312,198). The offer, apparently made to the conservator of a beneficiary under the will prior to settlement of the probate dispute and the appointment of plaintiff as executrix, was never accepted, although it apparently remained open after the plaintiff's appointment in December 1986.

Plaintiff commenced this action in February 1988, seeking an accounting and division of the property and the appointment of a temporary receiver. Plaintiff claimed that defendant was unjustifiably holding approximately $500,000 in rents collected since the testator's death. In opposition, defendant asserted that his offer, based on the $855,000 evaluation, constituted an attempt to account and that the estate had no interest in the real property itself, only a personalty claim for date-of-death value. After plaintiff apparently conceded that the appointment of a temporary receiver was unnecessary, the

matter was set down for a trial to determine the actual value of the property.

Plaintiff's appraiser, on an income approach and using the same rent roll relied on by defendant's appraiser and even higher expenses, found a value of $688,934. Approximately $82,000 of the $195,000 difference between this valuation and the lower income-approach valuation of defendant's appraiser was due to the inclusion of an amount for the future value of remaining J-51 tax abatements obtained as a result of a 1976 renovation undertaken by defendant and the testator. Plaintiff's appraiser also used a second method of valuation. On the premise that the most productive use of the property, which, in his view, was located in one of the most desirable areas of Brooklyn, where cooperatives were in great demand, would be a conversion to cooperative ownership, the appraiser concluded that the value of such conversion was $1,000,000. In arriving at such a value, the appraiser assumed that the conversion would be on a noneviction basis and undertaken by a third party who would purchase the property from defendant for such purpose. The latter factor actually reduced the value of the property by $635,000 as the appraiser deducted a 30% profit margin and carrying costs for a new purchase-money mortgage during the conversion process. Plaintiff's appraiser estimated that 18 of the 2½-room units would sell for $50,000 each; that the least desirable 2½-room unit would sell for $40,000; and the larger units for $60,000, $75,000, $78,000, and $87,000. The sum of these figures, together with a projected underlying mortgage of $500,000, led the appraiser to a total purchase price $1,740,000. He also made deductions for a $25,000 reserve fund and other items such as third-party sponsor profits of $515,000 and carrying costs of $120,000, arriving at a net value of $1,000,000. Plaintiff stressed that the estate used this appraisal method for tax purposes and paid taxes on the basis of the $1,000,000 valuation.

In the midst of the cross-examination of plaintiff's appraiser, the court inquired of defendant, who had not been sworn, whether he had ever contemplated converting the property. Defendant answered that he had not since the units were rent stabilized, too small and there never had been many vacancies at any given time. Defendant was permitted to state that the partnership's decision to renovate and utilize the property for rental purposes was based on a highest and best use assessment. The court never inquired as to whether any cross-examination of defendant was desired and the cross-examination of

plaintiff's appraiser was resumed. Defendant rested without presenting any witnesses.

The court rejected plaintiff's $1,000,000 cooperative conversion valuation as unrealistic and too speculative and accepted her appraiser's $688,934 income approach valuation, finding that plaintiff was entitled to one half of the total of that amount and any cash on hand as of the date of death, less any outstanding mortgage as of that date. Finding that defendant had attempted to account by hiring an appraiser and making an offer to the estate, which was rejected, and that defendant continued the business of the partnership with the implied consent of plaintiff, the court, citing Partnership Law § 73, held that plaintiff was entitled to have the value of the property ascertained as of the date of death. In addition, it held that plaintiff was entitled, at her option, to either interest on the net amount due her under the court's formulation of the value of the testator's interest as of the date of death or one half of the profits from that date to the present. Solely on the basis of an inspection of the partnership's uncertified 1985-1988 financial statement, plaintiff "conditionally" elected "under protest" to receive interest on the value of the testator's interest, rather than profits. Plaintiff appeals.

We reject plaintiff's argument that since defendant failed to perform his fiduciary duty of winding up the partnership after the testator's death the estate is entitled to force liquidation of the partnership property and thereby share in the current value thereof, including postdeath appreciation. The record, however, fails to disclose any demand that the surviving partner liquidate. All that plaintiff ever sought was financial information, a share of the rental income and a higher buyout price. Thus, the court could properly find that the surviving partner continued the business with implied consent. Moreover, there is no authority for the proposition that the surviving partner's delay in accounting permits the estate of the deceased partner to share in the postdeath appreciation of partnership assets. While Partnership Law § 73 protects an estate against postdeath decline in the value of partnership property, it provides no basis for an estate to share in the postdeath appreciation. Indeed, such a rule would contradict Partnership Law § 51 (2) (d), which provides that, upon death of a partner, partnership assets vest in the surviving partner, who possesses them only for partnership purposes.

On our review of the record, we find that the court properly rejected plaintiff's cooperative conversion valuation of the property. Even accepting the strength of the Brooklyn Heights

cooperative market in 1985 and the appeal of the projected $50,000 selling price for the 2½-room units, it was clearly unduly optimistic to assume, as plaintiff's expert did, a 100% sellout of any such offering. The assumption that not all rent-stabilized tenants would purchase but that a third-party purchaser, in the expectancy that investors would buy such occupied units in bulk, would purchase for conversion purposes was unduly optimistic, even prior to the adoption of the 1986 Tax Reform Act. The more realistic projection of a sale of only 50% of the units at the suggested prices would reduce the gross sales figure, excluding the portion of the underlying mortgage which the sponsor himself would have to carry, from $1,740,000 to $870,000 and eliminate the profit margin needed to induce a third party to purchase, and explains why the partnership and/or surviving partner did not convert the property either before or after the testator's death. Thus, a purchase for cooperative conversion was highly unlikely. On the other hand, plaintiff's $688,934 income approach value, which the court adopted, is equally deficient, since it suffers from treating the property in the same way as any other with annual net income of $67,000, without regard to its prime location and renovated condition. More probative of the property's true value would be an approach based on comparable sales. Using such an analysis, defendant's expert, as noted, found a value of $855,000.

Accordingly, we modify to increase the valuation to $855,000, as found by defendant's appraiser. Even though he did not testify, his appraisal is part of the record. Since defendant made an offer to the estate based on that valuation and in his answer asserts as an affirmative defense that he performed all the obligations he had to the estate, the $855,000 valuation can be construed not as an inadmissible settlement offer, but as an admission of liability, below which defendant was not free to contest. (See, Central Petroleum Corp. v Kyriakoudes, 121 AD2d 165, lv dismissed 68 NY2d 807.)

The trial court also required plaintiff, within 30 days of service of a copy of its order and without the benefit of a formal accounting, to elect between interest on the estate's one-half share or one half of the profits from the date of death. This was error since defendant, as the surviving partner, had not provided financial information for the 1985-1988 period. Accordingly, we further modify to permit plaintiff to make her election within 30 days of receiving a full account-

ing of the property's postdeath operations. Concur—Sullivan, J. P., Milonas, Rosenberger and Smith, JJ.